**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| PAMELA DUNN-CARTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:13-CV-1489-RWS |
| PATRICK DONAHOE, | : | |
| POSTMASTER GENERAL, | : | |
| UNITED STATES POSTAL | : | |
| SERVICE, | : | |
| | : | |
| Defendant. | : | |

## ORDER

This case comes before the Court on Defendant's Motion for Summary

Judgment [27], Plaintiff's Motion to Amend Complaint [30], Defendant's

Motion to Strike or, Alternatively, Exclude from Consideration [33], and

Plaintiff's Motion to Strike [39].  After reviewing the record, the Court enters

the following Order.

## Background

Plaintiff Pamela Dunn-Carter filed this action under the Americans with

Disabilities Act ("ADA")[1] against Defendant Patrick Donahoe, Postmaster

_____

[1]The Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, applies to federal employers,
but the standards used under the Rehabilitation Act are the same as those used under

General of the United States Postal Service ("USPS"), alleging that Defendant retaliated against her for filing an Equal Employment Opportunity Charge of Discrimination ("EEO Charge") against USPS.  Plaintiff began working for USPS in 1988 as a distribution clerk.  (Def.'s Statement of Material Facts ("SMF"), Dkt. [27-1] ¶¶ 1-2.)  In 1993, Plaintiff suffered a work-related injury, and as a result, she has been on modified or limited-duty status with USPS.  (Id. ¶¶ 4-5.)  Around March 2006, Plaintiff began working at the North Metro USPS office in a modified-duty position performing human-resources specialist functions, namely processing job applications.  (Id. ¶¶ 12-13.)  By July 2007, James Reid and Deb Gracek were Plaintiff's supervisors on the Human Resources Team at North Metro.  (Id. ¶¶ 15-16.)

According to Defendant, Plaintiff began having some performance problems associated with an increased work load.  (See id. ¶¶ 19-21.)  Plaintiff then decided to move from the North Metro facility to the Bulk Mail Center ("BMC") where she could get extra help with her work processing job-application files, which she would send on to Mr. Reid and Ms. Gracek at North

_____

the ADA.  Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).

Metro.  (Id. ¶ 24.)  On September 4, 2007, Plaintiff began working at the BMC,

where Marvin Rasheed was the Acting Plant Manager.  (Id. ¶ 28.)

Around September 14 or 15, 2007, Plaintiff initiated an EEO Complaint

naming Mr. Reid and Ms. Gracek as the discriminating officials.  (Id. ¶ 34.)

Plaintiff alleged that Mr. Reid and Ms. Gracek unfairly scrutinized her work

and harassed her because of her race and disability when she tried to discuss the

heavy workload at North Metro.  (See Info. for Pre-Compl. Counseling, Dkt.

[27-3] at 8-10.)  After she filed her EEO Complaint, Plaintiff states that Mr.

Reid sent numerous e-mails to her and other USPS human-resource supervisors,

as well as Mr. Rasheed, between October 16, 2007, and November 5, 2007,

pointing out various problems with Plaintiff's processing of job applicants.

(Def.'s SMF, Dkt. [27-1] ¶¶ 37-38; E-mails, Dkt. [27-3] at 16-23.)  Plaintiff

says she never had documented performance problems before receiving those e-

mails.  (Pl.'s Statement of Disputed Facts, Dkt. [29-2] ¶ 6.)

On November 6, 2007, Plaintiff participated in an EEO mediation

proceeding related to her EEO Charge against Mr. Reid and Ms. Gracek, who

were still working at the North Metro facility.  (Def.'s SMF, Dkt. [27-1] ¶ 43.)

Two days after mediation, Mr. Rasheed removed Plaintiff from her position

3

performing human-resources specialist functions and gave her other duties.  (Id.
¶ 44; Pl.'s Statement of Disputed Facts, Dkt. [29-2] ¶¶ 16-17, 27.)  It appears
that the new position was less favorable because it was not a limited-duty
position.  (See Pl.'s Statement of Disputed Facts, Dkt. [29-2] ¶ 31.)  On
November 15, 2007, Plaintiff was told to leave her office, and the next day she
was told to store her work-related items on a cart and to sit in a conference
room until it was needed by other employees.  (Id. ¶¶ 28-29.)  When other
employees needed the conference room, Plaintiff wandered the halls looking for
a place to sit.  (Id. ¶ 30.)

Plaintiff now brings a retaliation claim based on Mr. Rasheed's decision
to remove her from her human-resources duties.  Defendant argues that Mr.
Rasheed could not have possibly retaliated against her because he did not know
that Plaintiff had filed an EEO Charge against Mr. Reid and Ms. Gracek.  As
discussed below, in response to Defendant's summary judgment motion,
Plaintiff attempts to introduce affidavits from two witnesses purporting to show
that Mr. Rasheed had knowledge of Plaintiff's EEO Charge.  Defendant moves
to strike those affidavits.  In addition, Plaintiff moves to amend her Complaint

4

to add allegations about Mr. Rasheed's knowledge, and Plaintiff also moves to strike two of Defendant's filings related to its Motion for Summary Judgment.

## Discussion

### I.   Plaintiff's Motion to Strike [39]

Plaintiff moves to strike two documents Defendant filed in connection with its Motion for Summary Judgment: the Objections and Responses to Plaintiff's Statement of Disputed Facts [36], and the Consolidated Statement of Undisputed Facts & Reply to Undisputed Material Facts [35].  Plaintiff argues that in both documents, Defendant failed to limit its responses to the acceptable responses listed under Local Rule 56.1.B(3), instead relying on argumentative statements.  The Court finds that Defendant substantially complied with Local Rule 56.1.  However, to the extent that any of Defendant's arguments are argumentative, the Court will not consider them.  Therefore, the Court **DENIES** Plaintiff's Motion to Strike [36].

### II.   Defendant's Motion to Strike or Exclude from Consideration [33]

Defendant moves to strike two affidavits Plaintiff uses to respond to Defendant's Motion for Summary Judgment.  The affidavits are from Gwendolyn Joyce White and Glenda Sparks Karasoulis.  Both witnesses

5

provide evidence that the Acting Plant Manager at the BMC, Mr. Rasheed, had knowledge of Plaintiff's 2007 EEO activities when he removed her from her employment position.  Ms. White states she accompanied and represented Plaintiff during her mediation on November 6, 2007.  (White Aff., Dkt. [31-7] ¶ 2.)  After the mediation, Ms. White and Plaintiff ran into Mr. Rasheed, Plaintiff introduced Ms. White to Mr. Rasheed, and they discussed the fact that Ms. White had attended Plaintiff's mediation.  (Id. ¶ 4.)  In light of this testimony, Plaintiff argues that Mr. Rasheed knew of her protected activities and therefore retaliated against her two days later.

Ms. Karasoulis offers testimony that she was with Plaintiff before and after Plaintiff's November 8, 2007 meeting with Mr. Rasheed.  After the meeting, Ms. Karasoulis states that Plaintiff appeared stressed, startled, and shaken.  (Karasoulis Aff., Dkt. [31-10] ¶¶ 4-5.)  Plaintiff explained that Mr. Rasheed had just told her that he would change her employment position because two other employees no longer wanted to work with her because they feared that Plaintiff would retaliate against them based on her history of having filed an EEO Charge.  (Id. ¶ 6.)  Again, Plaintiff asserts that this is evidence Mr. Rasheed was aware of her EEO activities.

6

Defendant objects to the use of these affidavits because neither Ms. White nor Ms. Karasoulis was disclosed as a witness with discoverable information.  Parties are required to disclose the names of individuals likely to have discoverable information that the parties may use to support their claims or defenses, unless the use would be solely for impeachment.  FED. R. CIV. P. 26(a)(1)(i).  Parties are also required to supplement incomplete Rule 26(a) disclosures.  FED. R. CIV. P. 26(e)(1).  Thus, "the obligation to disclose pertinent parties is continuing [throughout the case]."  F.T.C. v. Nat'l Urological Grp., Inc., 645 F. Supp. 2d 1167, 1179 (N.D. Ga. 2008).  If a party fails to comply with Rule 26(a) or (e), that party is precluded from using the undisclosed witness "to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).

In her initial disclosures, Plaintiff identified four individuals with discoverable information: (1) Plaintiff, (2) Mr. Rasheed, (3) Ms. Gracek, and (4) Mr. Reid.  (Dkt. [33-1] at 8.)  Plaintiff does not deny that she never disclosed Ms. White or Ms. Karasoulis as witnesses, instead arguing that she was not required to disclose them because they are impeachment witnesses used solely to undermine Mr. Rasheed's testimony.  (See Pl.'s Resp., Dkt. [38] at 3-

7

4.)  But it is Plaintiff's burden to establish her prima facie case of retaliation,
and therefore Plaintiff must show that Mr. Rasheed knew about Plaintiff's
protected activities.  See, e.g, Brungart v. BellSouth Telecomms., Inc., 231 F.3d
791, 799 (11th Cir. 2000) ("In order to show the two things were not entirely
unrelated, the plaintiff must generally show that the decision maker was aware
of the protected conduct at the time of the adverse employment action.").  Just
because the evidence contradicts Mr. Rasheed's statement does not mean that
the evidence is only impeachment evidence; on the contrary, Plaintiff must rely
on the evidence for the substantive purpose of establishing Mr. Rasheed's
knowledge.  Cf. Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc., 389 F.3d
1339, 1353 (11th Cir. 2004) (holding that disclosure was not required because
"the disputed evidence, relating to the expert witness's qualifications as an
engineer, was used solely for the purposes of impeachment rather than for a
substantive purpose").  For that reason, the Court finds that the affidavits of Ms.
White and Ms. Karasoulis are not solely impeachment evidence and should
have been disclosed to Defendant.  Plaintiff's failure to disclose these witnesses
is not justified.

8

Furthermore, the Court finds that Plaintiff's failure is not harmless to Defendant, either.  These witnesses speak to an element of Plaintiff's prima facie case.  In fact, as discussed below, Defendant's summary judgment motion relies heavily on its contention that Mr. Rasheed did not know about Plaintiff's protected activity.  And there is not evidence showing that Defendant knew what these witnesses might testify about despite the lack of disclosure, so Defendant did not have an opportunity to depose them.  While Ms. White was identified as Plaintiff's mediation representative in some of the forms Plaintiff disclosed, (Pl.'s Reply, Dkt. [38] at 2) that fact does not hint that she had discoverable information about Mr. Rasheed's retaliation against Plaintiff. Plaintiff next states that Ms. Karasoulis was disclosed in an EEOC hearing related to this case, but the portion of the transcript Plaintiff cites simply says: "I went back to my office [after meeting with Mr. Rasheed] and Louise Spark[s Karasoulis][2] was in my office and I told her what had happened."  (See Pl.'s Reply, Dkt. [38] at 2; EEOC Hearing Tr., Dkt. [27-2] at 62:24-63:4.)  That is the only time Ms. Karasoulis is named during the entire EEOC hearing.  Nor

_____

[2]Ms. Sparks got married in December 2008 and later changed her last name to Karasoulis.  (Karasoulis Aff., Dkt. [31-10] ¶ 2.)

9

does Plaintiff point to other documents or pleadings showing that she would rely on testimony from Ms. Karasoulis, or what that testimony would be. The Court finds that Defendant would not have known that Plaintiff would use these witnesses, and so Plaintiff's non-disclosure was not harmless. For these reasons, the Court **GRANTS** Defendant's Motion to Strike [33].

## III.    Plaintiff's Motion to Amend the Complaint [30]

Plaintiff also seeks leave to amend her Complaint, apparently in order to correct minor mistakes and to add the allegation that Plaintiff, Ms. White, and Mr. Rasheed had a conversation about Plaintiff's EEO mediation. (See Am. Compl., Dkt. [30-1] ¶ 16.) The Federal Rules of Civil Procedure provide that leave to amend a pleading should be given "freely" "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is "not an automatic right," however. Faser v. Sears, Roebuck & Co., 674 F.2d 856, 860 (11th Cir. 1982). In deciding whether to grant a party leave to amend, the Court should consider factors such as whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Foman v. Davis, 371 U.S. 178,

182 (1962).  The decision of whether to give leave to amend is within the

discretion of the trial court.  <u>Saewitz v. Lexington Ins. Co.</u>, 133 F. App'x 695,

699 (11th Cir. 2005).

Defendant opposes amendment, arguing that the motion came too long

after the close of discovery and without justification for the undue delay.  The

Court agrees.  Plaintiff filed this action on May 2, 2013, and discovery closed

on May 12, 2014, after the Court extended the time for discovery at Plaintiff's

request.  Defendant moved for summary judgment on July 8, 2014, and Plaintiff

did not move to amend until August 28, 2014, over three months after the close

of discovery.

Although leave to amend should be freely granted, here the Court finds

no justification for Plaintiff's request to add allegations about Ms. White at this

late stage.  Plaintiff was present at the conversation with Ms. White, and so

Plaintiff knew that Ms. White could speak to Mr. Rasheed's knowledge of her

EEO mediation.  Therefore, Ms. White does not offer any newly discovered

evidence, and Plaintiff could have included this allegation in her original

Complaint or sought leave to amend much earlier.  Granting leave to amend at

this point would prejudice Defendant and reward Plaintiff's undue delay in

11

seeking leave to amend.  See, e.g., Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008) ("Because the period of discovery had expired [seven weeks earlier], granting the motion would have caused the defendants undue prejudice, as they would not have been able to conduct further discovery with respect to the claim the proposed amendment asserted."); Lowe's Home Ctrs., Inc. v. Olin Corp., 313 F.3d 1307, 1315 (11th Cir. 2002) ("It is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment."). Consequently, Plaintiff's Motion for Leave to Amend [30] is **DENIED**.

## IV.    Defendant's Motion for Summary Judgment [27]

### A.    Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.' " Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

> B.     Analysis

In addition to its prohibition on discrimination, the ADA prohibits retaliation, providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual has made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a).  The same burden-shifting framework that governs claims for ADA discrimination also governs claims for ADA retaliation.  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  In that regard, Plaintiff must first establish a prima facie case of retaliation by showing: "(1) statutorily protected expression; (2) adverse employment action; and (3) a

14

causal link between the protected expression and the adverse action." Stewart, 117 F.3d at 1287.

"[I]f the plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006). If the employer meets this burden, then the burden of production shifts back to the plaintiff, who "must show that the proffered reason really is a pretext for unlawful discrimination." Id. (quoting EEOC v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002)).

1.    *Plaintiff Fails to State a Prima Facie Case of Retaliation*

Defendant's alleged retaliatory act is Mr. Rasheed's decision to remove Plaintiff from her human-resources duties on November 8, 2007. Plaintiff argues that other actions constituted retaliation, such as Mr. Reid and Ms. Gracek's alleged harassing e-mails, but the only retaliatory act identified in Plaintiff's Complaint was Mr. Rasheed's employment decision. (See Compl., Dkt. [1] ¶ 20.) In any event, the Court has reviewed the e-mails and concludes that they do not rise to the level of an adverse employment action. (See E-

15

mails, Dkt. [27-3] at 16-23.)  "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal quotation marks omitted) (quoting Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)).  The e-mails here raised concerns about Plaintiff's processing of employment applications but did not alter her employment status or terms of employment.  Even if these e-mails were motivated by discriminatory animus, they do not rise to the level of an adverse employment action.  Instead, the Court focuses on Mr. Rasheed's decision to remove Plaintiff from her employment duties on November 8, 2007.

In arguing that Mr. Rasheed did not even know about the EEO Charge, Defendant attacks the third element of Plaintiff's retaliation claim: the causal connection between the protected activity and the adverse employment action. (See Rasheed Aff., Dkt. [27-12] ¶¶ 116-18.)

16

"To establish a causal connection, [a plaintiff] must show that (1) the decision-makers were aware of the protected conduct and (2) the protected activity and the adverse act were not wholly unrelated." Alansari v. Tropic Star Seafood Inc., 388 F. App'x 902, 905 (11th Cir. 2010) (citing Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002)). Even in cases like this one where there is close temporal proximity between the protected act and adverse action, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Brungart, 231 F.3d at 799. "Furthermore, knowledge on the part of persons other than a decision maker cannot be imputed from other supervisors to the decision maker for purposes of an [ADA] retaliation claim." Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010).

At the June 11, 2009 EEOC hearing related to this case, Mr. Rasheed testified that in November 2007 he did not know about Plaintiff's EEO Charge. (EEOC Hearing Tr., Dkt. [27-2] at 251-52.) Mr. Rasheed also denied that he told Plaintiff that Ms. Gracek and Mr. Reid no longer wanted to work with her out of fear of reprisal, or that either one of them told him as much. (Id. at 243,

17

251.)  Rather, Mr. Rasheed stated that he removed Plaintiff from her position

because he thought her work relationship with other human-resources

employees "was not productive."  (Id. at 245.)

Plaintiff cites three pieces of evidence to show Mr. Rasheed's

knowledge: Ms. White's recollection of a conversation with Mr. Rasheed, Ms.

Karasoulis's recollection of a conversation with Plaintiff, and Plaintiff's

testimony that Mr. Rasheed told her that Ms. Gracek and Mr. Reid did not want

to work with her.  (See Pl.'s Resp., Dkt. [29] at 15-16.)  Because the Court will

not consider the affidavits from the undisclosed witnesses, the Court turns to

Plaintiff's statement about what Mr. Rasheed told her.

At the June 11, 2009 EEOC hearing, Plaintiff described her conversation

with Mr. Rasheed:

> Q      Okay, now, what did Mr. Rasheed tell you, the reason he
>        was taking you out?
>
> A      He said they did not — Deb [Gracek] and James [Reid] did
>        not — did no longer wanted [sic] to work with me.
>
> Q      Okay.  And did you ask him why?
>
> A      Yes, he said that he thinks that some kind of reprisal or
>        retaliator something about that [sic].

18

(EEOC Hearing Tr., Dkt. [27-2] at 63.)

The administrative judge then interrupted the questioning to get more

details and clarification:

Judge Layton: . . . [T]hat they were worried that you were going to reprise against them?

The Complainant: Yes.

Judge Layton: But they were worried about [whether] you were going to file an EEO against them?

The Complainant: *That's what I assume. I don't* —

Judge Layton: What exactly did he say?

The Complainant: He said that they no longer wanted to work with me for fear of reprisal.

Judge Layton: For fear of reprisal. But he didn't say whether or not that meant they were afraid you were going to file an EEO against them or what?  Because that's pretty sketchy.  I mean somebody's telling you that they don't want to work with you; you didn't ask him, well, what do you mean by that?

The Complainant: He said that they said that my work was — I wasn't doing a good job with my work and it was causing . . . causing them to be late hiring people and they didn't want to work with me anymore and he was going to give that job to Bridget O'Neill.

(Id. at 64-65 (emphasis added).)

This evidence does not create a factual dispute concerning Mr. Rasheed's knowledge of Plaintiff's EEO Charge against Mr. Reid and Ms. Gracek.  Her testimony that Mr. Rasheed mentioned those two employees' fear of reprisal is vague.  Plaintiff even admits that she only assumed Mr. Rasheed was referring to an EEO charge as reprisal.  What is more, Plaintiff's version still does not show that Mr. Rasheed knew that she had already filed an EEO Charge against Mr. Reid and Ms. Gracek, or that she otherwise engaged in protected activity by opposing unlawful discrimination.  As explained below, there is no evidence that Mr. Rasheed took part in or knew about Mr. Reid and Ms. Gracek's alleged discrimination against Plaintiff; the evidence only shows he knew about complaints related to Plaintiff's performance.  Without a causal connection between any protected activity and Mr. Rasheed's action, Plaintiff cannot establish a prima facie case of retaliation.

> 2. *Defendant Proffers a Legitimate, Non-Discriminatory Reason for Its Action*

Even though the Court finds that Plaintiff fails to establish a prima facie case of retaliation, the Court addresses the rest of the burden-shifting analysis. Once a plaintiff has established a prima facie case, a defendant need only raise a

genuine issue of fact as to whether the employer discriminated against its employee.  Wascura v. City of South Miami, 257 F.3d 1238, 1241 (11th Cir. 2001).  The defendant at this stage need not prove that he or she actually was motivated by the proffered non-discriminatory reasons; on the contrary, the defendant need only raise sufficient evidence from which a reasonable trier of fact could conclude that the employer's decision was not motivated by discriminatory animus.  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

As stated above, Defendant contends that Mr. Rasheed removed Plaintiff from her human resources position because "[t]he work relationship between her and the HR employees at North Metro was not productive."  (Rasheed Aff., Dkt. [27-12] ¶ 62.)  Mr. Rasheed based his decision on that fact that there "seemed to be a lot of conflict, disagreement between her and the people over [t]here at North Metro."  (EEOC Hearing Tr., Dkt. [27-2] at 245.)  He stated that they were not getting enough applicants hired, and so he contacted Mr. Reid and Ms. Gracek, who reported to him that Plaintiff "was making a lot of mistakes" on the applicant files  (Id. at 246, 261-62.)

21

Defendant has therefore proffered a legitimate, non-discriminatory reason for taking the adverse employment action.  And so, to avoid summary judgment, Plaintiff must produce "sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual."  Wascura, 257 F.3d at 1243.

> ### 3.  *Plaintiff Fails to Show Pretext*

To establish pretext, a plaintiff must present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1268 (11th Cir. 2008).  The "employee must meet that reason head on and rebut it."  Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000).  This "inquiry is limited to whether the employer gave an honest explanation of its behavior."  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)).  "[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory . . .

22

." Id. (quoting Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323 n.4 (11th

Cir. 1982)); see also Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253,

1266 (11th Cir. 2010) ("The question to be resolved is not the wisdom or

accuracy of [the defendant's] conclusion that [the plaintiff's] performance was

unsatisfactory, or whether the decision to fire her was 'prudent or fair.' "

(quoting Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002))).

       Plaintiff presents no evidence to dispute whether Mr. Rasheed believed in

good faith that Plaintiff's performance was lacking.  While Plaintiff argues that

she had no documented performance problems until after she filed her 2007

EEO Charge, (see Pl.'s Resp., Dkt. [29] at 19) there is no evidence that Mr.

Rasheed used Mr. Reid's complaints about Plaintiff's performance as pretext

for disability discrimination.  Mr. Rasheed stated that he respected Plaintiff's

capabilities, and "she did a fantastic job for years."  (EEOC Hearing Tr., Dkt.

[27-2] at 250.)  But he went on to say that Mr. Reid "just brought it out that she

was making errors and I think Ms. [Gracek] had just came on the scene and, you

know, basically, you can do something for years and still don't get it right, you

know, he brought out examples of what was going on and the mistakes she was

making.  It did not appear to be personal from their perspective."  (Id.)

23

To be clear, whether Plaintiff actually made errors is not the issue here. Courts are careful not to permit plaintiffs "simply to litigate whether they are, in fact, good employees." Alvarez, 610 F.3d at 1266 (quoting Rojas, 285 F.3d at 1342). What matters is what goes on inside "the decision maker's head." Id. And Plaintiff does not produce any evidence contradicting that Mr. Rasheed *believed* there were personality conflicts and a lack of productivity. Instead, the evidence indicates that Mr. Rasheed contacted Mr. Reid and Ms. Gracek to ask why they were not hiring the applicants Plaintiff sent to them, which "was causing problems." (EEOC Hearing Tr., Dkt. [27-2] at 262.) They reported that Plaintiff was making mistakes, and so Mr. Rasheed made the decision to remove her from her human resources duties. Plaintiff even acknowledges that Mr. Rasheed told her that the performance problems causing late hiring informed his decision. (See id. at 65.) And, construing the facts in Plaintiff's favor, the Court assumes that Mr. Rasheed also said Mr. Reid and Ms. Gracek did not want to work with Plaintiff out of fear of reprisal. But without evidence that Mr. Rasheed was aware of allegations of discrimination or of Plaintiff's protected activity, Plaintiff's speculation that he was referring to filing an EEO complaint, without more, is not enough to rebut Mr. Rasheed's legitimate, non-

24

discriminatory reason for his decision.  In sum, because Plaintiff fails to create a factual dispute regarding pretext, Defendant is entitled to summary judgment.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [27] is **GRANTED**, Plaintiff's Motion to Amend Complaint [30] is **DENIED**, Defendant's Motion to Strike or, Alternatively, Exclude from Consideration [33] is **GRANTED**, and Plaintiff's Motion to Strike [39] is **DENIED**.

**SO ORDERED**, this __30th__ day of March, 2015.


**RICHARD W. STORY**
United States District Judge

25